C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
WILSON ESGUERRRA,                              :
                                               :     **MEMORANDUM**
                              Petitioner,       :     **DECISION AND ORDER**
                                               :
              - against -                       :     21-cv-449 (BMC)
                                               :
SHAWN CRONIN, Superintendent,                  :
                                               :
                              Respondent.       :
                                               :
-------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner seeks habeas corpus review under 28 U.S.C. § 2254 of his state court

conviction for second degree gang assault, third degree assault, attempted third degree assault,

and second degree harassment, for which he was sentenced to a total of six years.  He raises three

points of error: (1) insufficiency of the evidence; (2) due process violations because of excessive

language in the prosecutor's closing; and (3) excessive sentence.  The facts will be set forth

below to the extent necessary to address petitioner's points of error, but to summarize, petitioner

engaged in a verbal altercation with a bar employee that spilled into the street and resulted in

petitioner and his accomplices assaulting the bar employee and a patron at the bar, seriously

injuring the latter.

For the reasons set forth below, none of petitioner's claims meet the standard for review

under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 *et seq.*,

and the petition is therefore denied.

I.    **Sufficiency of the Evidence**

A.    **Background**

The main actors besides petitioner in the crimes under consideration were these: (1) Miguel, the bouncer or bartender at a bar at which petitioner was a patron; (2) Liliana, a friend of petitioner's former girlfriend; (3) Samy, another bar patron who knew Liliana as a bartender; (4) Denis, a lawyer who was a bar patron on the night in question and witnessed the events; and (5) two unidentified accomplices of petitioner's, who came at his call and joined the physical altercation when it began outside the bar.

Petitioner was drinking shots of tequila and beer at the bar.  When Miguel the bouncer, who had been working at the bar for sixteen years, began his shift at 8:00 p.m., he observed petitioner drinking by himself.  Miguel knew petitioner as a bar patron, as petitioner was at the bar every Friday night.  Both Miguel and Denis the lawyer heard petitioner cursing at one of the female bartenders, and petitioner was waiving his hands and was "loud and very obnoxious" and "extraordinarily agitated."

Miguel asked petitioner why he was disrespecting the female bartender, but petitioner told him it was none of his business.  Miguel responded that he was not going to serve petitioner any more alcohol and tried to walk him outside the bar, at which point petitioner said, "things are not going to stay that way."  As petitioner exited the bar, Miguel stayed outside at the door to stop petitioner from re-entering.

Liliana was outside the bar waiting at an intersection to cross the street as she walked home.  Liliana was acquainted with petitioner because she was a friend of petitioner's former girlfriend; both Liliana and the former girlfriend had worked at another bar that petitioner patronized.  Petitioner approached Liliana and started cursing and threatening her, blaming her

2

for the former girlfriend's decision to break up with him. He would walk away but then come back and continue yelling at her.

Samy, another bar patron, had been sitting at the bar but had not noticed petitioner there. He went outside for a cigarette break during which he saw and heard the exchanges between petitioner and Liliana. Samy was acquainted with Liliana because he patronized another bar where she worked as a bartender. He attempted to intervene, telling petitioner to stop insulting Liliana, but petitioner warned Samy not to get involved.

Samy returned to the bar but left about 10 or 15 minutes later. Petitioner was still going at it with Liliana. The altercation increased in volume and Denis and some of the other bar patrons crowded the front windows of the bar to see what the rumpus was. Miguel observed petitioner spitting at Liliana and taking swings with his fists but not connecting.

Liliana called the police while defendant was right up against her face. Petitioner told her to "call whoever [she] wanted because he was going to hurt her . . . [and her] children."

At that point, Samy told Liliana to come stand beside him in front of the bar because he thought that petitioner might land a punch. That's the last thing Samy remembered. Denis the lawyer saw petitioner strike Samy with a "barrage of really fast, lighting punches." Denis heard and saw petitioner make a cellphone call, telling someone to "get down here" and "homies, this is bullshit, you gotta get down here." Lilliana and Miguel also saw the phone call but could not make out what petitioner said.

Not more than a minute or two after the phone call, Denis saw a car stop in the middle of the street and a large bearded Hispanic man came running over to Miguel, who was still standing outside the door of the bar. Then another car stopped suddenly and another bearded Hispanic individual exited and approached. By that time, petitioner had attacked Miguel and they both

fell to the pavement.  The two men joined the attack on Miguel; all three were punching him and Miguel's t-shirt was ripped off in the process.   Miguel saw that the two men also directed their attention towards Samy, hitting him and throwing him to the ground, at which point they kicked him.

Denis saw petitioner make a gesture as if he was shooting a gun towards Miguel's head. Denis realized that the incident was "really getting out of control" so he returned to the bar and called 911.  When the police arrived, Denis identified petitioner and the two men from the cars as the attackers.  Miguel carried Samy into the bar, during which Samy began to regain consciousness; Miguel described Samy as "look[ing] like chopped meat" and saw blood "spurting out" from around his eye.

Samy had in fact been badly hurt.  He was hospitalized in an induced coma for eight days, had maxillofacial surgery that involved the placement of seven titanium plates around his left eye, cheek, and his nose, plus 37 permanent screws.  He had no sensation in about half of his mouth, partial loss of sense of smell, and limited visibility in his left eye when he testified at the trial three years later.

### B.    Analysis

The Appellate Division rejected plaintiff's challenge to the sufficiency of the evidence on the merits.  It set forth a comprehensive summary of the evidence at trial and then held:

> Contrary to the defendant's contention, we find that the evidence was legally sufficient to establish the defendant's guilt of gang assault in the second degree and assault in the third degree beyond a reasonable doubt. Viewed in the light most favorable to the prosecution, the evidence was legally sufficient to support the convictions, as there was evidence that the defendant threatened to hurt Liliana, warned Samy not to get involved in the defendant's dispute with her, punched Samy several times in the face with "lightening fast punches" and then called others to "get down here," whereupon two others immediately arrived and began assaulting Miguel and Samy.

People v. Esguerra, 178 A.D.3d 722, 724, 112 N.Y.S.3d 256, 258-59 (2d Dep't 2019) (citations omitted), leave to app. denied, 35 N.Y.3d 941, 124 N.Y.S.3d 290 (2020).

Because the Appellate Division rejected petitioner's claim on the merits, my review of its ruling is constrained by AEDPA. AEDPA permits habeas corpus relief only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 577 U.S. 73, 76-77 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal

habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting <u>Burt v. Titlow</u>, 571 U.S. 12, 19 (2013))).

Petitioner's task is doubly difficult because he not only has to meet the narrow standard of AEDPA, but he also must satisfy the stringent standard for determining legal sufficiency.  The standard for reviewing claims of legal insufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  Thus, even when "faced with a record of historical facts that supports conflicting inferences, [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  <u>Id.</u> at 326.  Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised."  <u>Bossett v. Walker</u>, 41 F.3d 825, 830 (2d Cir. 1994) (internal quotation marks omitted).

Measured against this standard, petitioner's claim of legal insufficiency doesn't come close.  His main point was that Denis could not have seen and heard the altercation from inside the bar, and without Denis' testimony about the gun gesture and the words of the telephone call, the elements of gang assault could not bet met.  Putting aside the fact that other witnesses saw although did not hear the telephone call, petitioner's trial counsel vigorously cross-examined Denis on this and Denis, who was disinterested, never wavered.  It was up to the jury to determine whether to accept his testimony.

Indeed, although petitioner characterized this point of error on appeal as legal insufficiency, it was much closer to a challenge to the weight of the evidence, which petitioner also offered as an argument to the Appellate Division in the same brief point.  A challenge to the

weight of the evidence, however, is not cognizable on federal habeas corpus review.  See, e.g., Mobley v. Kirkpatrick, 778 F. Supp. 2d 291, 311 (W.D.N.Y. 2011) ("Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding." (citing, *inter alia*, Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence"))); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles . . . .  Accordingly, the Court is precluded from considering the claim." (internal quotation marks and citations omitted)).

Because the Appellate Division's decision on legal sufficiency was not contrary to or an unreasonable application of any Supreme Court authority, I reject plaintiff's point of error.

## II. Prosecutorial Misconduct

Before the Appellate Division, plaintiff claimed that many statements in the prosecutor's closing argument deprived him of due process of law:

- Defense counsel was "a very good lawyer;"

- Samy "wasn't trying to be a hero;"

- Samy "tried to do the right thing, tried to be honorable", and he "didn't want to press charges.  That's how good of a guy he is."

- the witnesses are "not on trial," "the defendant is on trial;"

- Characterizing the two Hispanic men from the cars as petitioner's "friends;"

- The jurors "know what injury [Samy] has" based on photographs admitted into evidence;

- Characterizing Samy's facial injuries as more than some boxers would have after 15 rounds;

- Describing the witnesses as "regular, hard-working people" who "wanted to go home at the end of the night;"

- Rhetorically asking the jurors "that's not harassment?" with regard to petitioner's statement to Liliana that he was going to kill her and her family regardless of who she called;

- Characterizing defendant's phone conversation when he called his accomplices as "screaming" into the phone;

- Asking the jurors to put themselves in the witnesses' shoes;

- Commenting on the reasonable doubt standard;

- The jury should consider the "important aspects of this case" instead of "the inconsistencies frame by frame that [defense] counsel pointed out;"

- Samy "probably saved Liliana from the same fate;"

- It was "not easy" for the witnesses to recount events from three years ago and the jury "would have the same experience" if asked to recall events from that long ago;

- "This wasn't a bar fight.  This was a beat-down, a stomp-out."

Petitioner argued that these statements amounted to either vouching for witnesses, drawing assumptions not supported by the evidence, appealing to the jurors' sympathy, or giving erroneous legal instructions.

The Appellate Division also rejected this argument on the merits:

> Although the prosecutor made a number of improper statements during his summation by, inter alia, vouching for witnesses, drawing assumptions not supported by the evidence, interjecting sympathy and speculation, and instructing the jurors about the law, the Supreme Court sustained the majority of the defendant's objections to these comments and provided curative instructions to the jury throughout the summation.  Accordingly, any prejudice to the defendant was alleviated, and he was not deprived of a fair trial.

Esguerra, 178 A.D.3d at 725, 112 N.Y.S.3d at 259 (citations omitted).

Once again, because the Appellate Division denied this claim on the merits, my review is subject to the limitations in AEDPA described above.  Furthermore, petitioner's burden to show constitutional error is again doubly difficult because he must not only meet the AEDPA standard, but the exacting showing that is required to demonstrate fundamental error in a closing argument.  Under federal law, a prosecutor has wide latitude in making his closing argument. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989).  Even where a prosecutor

has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair."  Darden v. Wainwright, 477 U.S. 168, 181-83 (1986).  To be entitled to habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."  Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (habeas relief is warranted only where the prosecution's claimed misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

My review of the prosecutor's summation shows that the Appellate Division's decision was neither contrary to nor an unreasonable application of any Supreme Court authority.  A few of the statements were arguably excessive, like rhetorically asking the jurors if they remembered things that happened to them three years ago as a way to excuse inconsistencies in the witnesses' testimony, or attempting to establish sympathy between the jurors and the witnesses by characterizing the witnesses as "regular people who just wanted to go home," but as the Appellate Division noted, the excessive statements were the subject of sustained objections – more, some of them resulted in harsh reprimands of the prosecutor by the court and corrective instructions to the jury.  And the majority of statements challenged on appeal were simply the prosecutor characterizing the evidence in the light most favorable to the prosecution.  The argument in its entirety did not approach a violation of due process as measured by the AEDPA standard.

III.   **Excessive Sentence**

Petitioner's final point of error is that his sentence was excessive.  It was phrased to the Appellate Division as an "interests of justice" argument, that is, an argument that appealed to the

Appellate Division's discretion in conducting a plenary review.  See N.Y. C.P.L. § 470.15(3).

The six-year aggregate sentence that the court imposed was far less than the maximum fifteen

years it could have imposed for the gang assault alone.  See N.Y. Penal Law § 70.02(b).  Under

these circumstances, petitioner does not have a cognizable constitutional claim.  See White v.

Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where,

as here, the sentence is within the range prescribed by state law.").

**CONCLUSION**

The petition is denied and the case is dismissed.   A certificate of appealability shall not

issue as the motion presents no substantial questions.  See 28 U.S.C. § 2253(c).  Further, the

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be

taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.

See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by
Brian M. Cogan
_____
U.S.D.J.

Dated:  Brooklyn, New York
         February 22, 2021

10